## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**CEDRICK MORGAN (#132458)**                                    **CIVIL ACTION**

**VERSUS**

**TERRY TERRELL, WARDEN**                                    **NO. 13-0783-BAJ-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed an opposition to the petitioner's application, and the petitioner has filed a response. There is no need for oral argument or for an evidentiary hearing.

On or about December 3, 2013, the *pro se* petitioner, an inmate confined at Allen Correctional Center, Kinder, Louisiana, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, attacking his criminal conviction and 20-year sentence, as enhanced by a multiple offender adjudication, entered in 2008 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of aggravated battery. The petitioner asserts that he was provided with ineffective assistance of counsel on appeal because his attorney failed to preserve as appellate issues the alleged insufficiency of the evidence to support the conviction, the alleged discriminatory use of peremptory challenges by the prosecution during jury selection in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and the alleged improper admission of other crimes evidence against the petitioner at trial.

### Procedural Background

A review of the record reflects that the petitioner was charged by an amended Bill of

Information with one count of attempted second degree murder. After a jury trial conducted in 2005, the petitioner was found guilty of the responsive offense of aggravated battery. The State thereafter signified its intent to charge the petitioner as a multiple offender and, after a hearing conducted in December, 2005, the petitioner was adjudicated a fourth felony offender and sentenced to serve twenty (20) years in confinement, without the benefit of parole, probation or suspension of sentence. The petitioner thereafter appealed that determination to the Louisiana Court of Appeal for the First Circuit, challenging only the constitutionality of the sentence. On September 15, 2006, the appellate court affirmed the conviction and multiple offender adjudication but remanded for re-sentencing in light of the court's conclusion that the sentence should have provided for parole eligibility. *See State v. Morgan*, 943 So.2d 500 (La. App. 1st Cir. 2006). The petitioner did not seek further review of that determination in the Louisiana Supreme Court.

The petitioner was re-sentenced in February, 2008, again to 20 years in confinement, and he again appealed, asserting both counseled and *pro se* claims, including (1) that the jury's verdict was not unanimous, (2) that his sentence was excessive, (3) that the evidence was insufficient to support the verdict, and (4) that the prosecution engaged in racial discrimination during jury selection in violation of *Batson v. Kentucky, supra*. On February 13, 2009, the intermediate appellate court affirmed the petitioner's 20-year sentence. *See State v. Morgan*, 5 So.3d 314 (La. App. 1st Cir. 2009). In doing so, however, the appellate court considered only the petitioner's claim regarding the alleged excessiveness of the sentence and concluded that the other claims were not properly before the court, specifically because the validity of the petitioner's conviction and multiple offender adjudication had already been finally determined

2

by reason of the court's decision in connection with the petitioner's initial appeal. The

petitioner's request for rehearing before the First Circuit Court was denied on March 31, 2009.

The petitioner did not seek further review before the Louisiana Supreme Court in connection

with the decision of the intermediate appellate court. Accordingly, his conviction and sentence

became final on April 30, 2009, upon the passage of the 30-day period allowed for him to do so.

*See* Louisiana Supreme Court Rule X, § 5(a) (providing a thirty-day deadline for seeking further

review in the Louisiana Supreme Court from a decision of the intermediate appellate court).

On or about May 3, 2009,[1] the petitioner filed an application for post-conviction relief

("PCR") in the state trial court, contending that he was provided with ineffective assistance of

counsel in connection with his initial appeal because his appellate attorney failed to raise as

issues for review, and thereby failed to preserve, the alleged insufficiency of the evidence to

support the verdict, the alleged wrongdoing of the prosecution during jury selection in violation

of *Batson v. Kentucky, supra*, and the alleged erroneous introduction of other crimes evidence

during trial. Upon the conclusion of proceedings in connection with the petitioner's PCR

---

1. Although the petitioner's application for post-conviction relief was docketed as filed in the state trial court on June 11, 2009, the United States Court of Appeals for the Fifth Circuit has instructed that Louisiana federal habeas courts should apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings. Accordingly, pleadings submitted by a habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for filing, not on the date that the pleadings are ultimately docketed by the receiving court. *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012). Thus, inasmuch as the petitioner apparently signed a cover letter submitting his state court application to the state court on May 3, 2009, and presumably gave it to prison officials for filing on that date, the Court will utilize that date as the presumptive date of filing. In addition, in hereafter referencing the dates of filing of the petitioner's various pleadings in state court, this Court will utilize the date that the petitioner apparently signed same or submitted same to prison officials, unless otherwise noted.

application in the trial court, the state district judge issued a final Ruling dismissing the

application on December 6, 2010.  It appears, however, that a copy of that Ruling was not mailed

to the petitioner at the time it was executed, and the petitioner contends that he did not in fact

receive a copy of the Ruling until approximately 1½ years later, on or about July 17, 2012.  As

discussed in greater detail hereafter, however, the petitioner was in fact notified of the Ruling

much earlier, in January, 2011.  Specifically, whereas the petitioner had filed, in September,

2010, an application for mandamus relief in the Louisiana First Circuit Court of Appeal,

complaining that there had been no decision issued in connection with his PCR application, the

First Circuit denied the mandamus application as "moot" on January 14, 2011, explicitly

advising the petitioner in its Mandate that "the trial court acted on relator's application for

postconviction relief on December 6, 2010."  Accordingly, the petitioner was placed on notice in

mid-January, 2011, that a Ruling on his PCR application had been issued approximately a month

earlier, in December, 2010.  The petitioner complains, however, that despite numerous attempts

at obtaining a copy of the Ruling of December 6, 2010, he was not in fact provided with same

until July 17, 2012, more than eighteen (18) months later, and he asserts that the resulting delay

was not attributable to any fault on his part.[2]

_____

    2.  At or around the same time that the petitioner filed his PCR application before the
state district court in June, 2009, he also filed a Motion to Vacate and Set Aside an Illegal
Multiple Offender Sentence.  That motion was denied by the state trial judge on April 22, 2010,
prior to the court's denial of the petitioner's PCR application on December 6, 2010.  Whereas the
petitioner also apparently did not receive a timely copy of the Ruling on the Motion to Vacate,
he thereafter pursued an application for mandamus relief in the Louisiana Court of Appeal for
the First Circuit, complaining of the delay in the issuance of such a Ruling, and he was advised,
by Mandate of the First Circuit court dated February 28, 2011, that a Ruling on the Motion to
Vacate had been issued approximately 10 months earlier, on April 22, 2010.  The petitioner did
not apparently seek further review in connection with the Motion to Vacate.  This Court agrees
with the State that, inasmuch as the proceedings in connection with the petitioner's Motion to

Upon receipt, finally, in July, 2012, of a copy of the December 6, 2010, Ruling denying

his PCR application, the petitioner filed an application for supervisory review in the Louisiana

intermediate appellate court on or about August 16, 2012, which court denied review on October

29, 2012, without comment. According to the State, the petitioner thereafter filed an untimely

writ application for further review before the Louisiana Supreme Court on or about February 19,

2013,[3] and that Court also denied review without comment, on November 15, 2013. *See State ex*

*rel. Morgan v. State*, 125 So.3d 1099 (La. 2013). The petitioner thereafter filed the instant

application for federal habeas corpus review in this Court on or about December 3, 2013.

Legal Discussion

Based upon the foregoing, this Court concludes, as asserted by the State of Louisiana,

that the petitioner's application is untimely. In this regard, pursuant to 28 U.S.C. § 2244(d),

---

Vacate were ongoing during the entirety of the pendency of proceedings in connection with the
petitioner's PCR proceedings, and were essentially concomitant therewith, the pendency of the
Motion to Vacate does not have any separate or independent impact upon the Court's calculation
of the limitations period in this case, specifically because the "[p]etitioner would receive no
added [tolling] benefit [from] his motion to vacate ... because his PCR application tolled the
same time period." *See* R. Doc. 9 at p. 10. Accordingly, the Court will not further address the
pendency of the petitioner's Motion to Vacate.

3. This Court has not located in the certified state court record a copy of the petitioner's
February, 2013, Supreme Court writ application in connection with his PCR application.
Whereas the State contends that the writ application was untimely – because it was filed more
than thirty days after the October 29, 2012, PCR ruling by the intermediate appellate court – the
petitioner contends that the Supreme Court writ application was timely because he did not
receive a copy of the appellate PCR ruling by the First Circuit Court until February 5, 2013. The
petitioner's assertion in this regard is conclusory, and he provides no evidence to support this
contention, either in the form of excerpts from his prison mail logs or a copy of the cover letter
from the First Circuit court reflecting the date of transmittal. Accordingly, this Court is unable
to evaluate the timeliness of the petitioner's Supreme Court writ application. Notwithstanding,
even if this Court were to employ the doctrine of equitable estoppel (because the petitioner
allegedly did not receive a timely copy of the First Circuit PCR ruling), this would not affect the
Court's determination in this case that the petitioner's application is untimely.

there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a properly filed application for state post-conviction or other collateral review is thereafter pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are *no* properly filed post-conviction or other collateral review proceedings pending does count toward calculation of the one-year period. To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Further, a properly-filed state application is considered to be "pending" both while it is before a state court for review and also during the interval after a state court's disposition while the petitioner is procedurally authorized under state law to proceed to the next level of state court consideration. *See Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In the instant case, the petitioner's conviction became final on April 30, 2009, thirty (30) days after the March 31, 2009, decision of the Louisiana First Circuit Court of Appeal on direct appeal, denying the petitioner's request for rehearing in connection with his re-sentence of February 6, 2008. Specifically, the conviction became final when the petitioner failed to timely seek further review by filing an application for supervisory review in the Louisiana Supreme Court within thirty days. *See* Louisiana Supreme Court Rule X, § 5(a). Accordingly, inasmuch

as the petitioner's direct appeal proceedings were concluded on April 30, 2009, the one-year

limitations period for filing a federal habeas corpus application began to run on that date.

Approximately one month later, on or about June 3, 2009, the petitioner filed a PCR application

in the state trial court, tolling the limitations period and asserting the ineffective assistance

claims that he now presents before this Court. As a result, only thirty-three days (April 30, 2009,

to June 3, 2009) elapsed from the one year limitations period before the petitioner tolled the

running thereof through the filing of his PCR application. The limitations period thereafter

remained tolled until the state trial court finally denied the petitioner's PCR application pursuant

to its Ruling of December 6, 2010, and the limitations period also remained tolled for an

additional thirty-day period, or until January 5, 2011, during which the petitioner was authorized

by Louisiana procedural rules to seek further review by filing an application for supervisory

review in the intermediate appellate court. *See* Rule 4-3 of the Uniform Rules of the Louisiana

Courts of Appeals. The petitioner, however, did not file an application for supervisory review

during that interval or seek an extension of time to do so and, as a result, in the absence of

statutory or equitable tolling of the limitations period as hereafter discussed, the limitations

period began to run again on January 6, 2011, and expired approximately eleven months later.[4]

Although the petitioner later took action to seek appellate review of the PCR denial by filing an

---

4. During the interval after the trial court's December 6, 2010, Ruling on the petitioner's PCR application, and prior to his subsequent continuation of his PCR proceedings by filing an application for supervisory review in the intermediate appellate court in August, 2012, the petitioner filed several applications for mandamus relief in the First Circuit appellate court. An application for mandamus relief, however, is not seen to be "an application for State post-conviction or other collateral review," the pendency of which would operate to toll the running of the limitations period under 28 U.S.C. § 2244(d)(2). *See Moore v. Cain*, 298 F.3d 361, 367 (5th Cir. 2002). Accordingly, the referenced mandamus proceedings may not be seen to have any effect upon the calculation of the running of the limitations period.

application for supervisory writs in the state appellate court on or about August 16, 2012, that

application was filed more than 1½ years after both the state court denial of the PCR application

and the date that the petitioner was advised thereof by the First Circuit Court's Mandate of

January 14, 2011. Accordingly, more than a year elapsed during which the petitioner did not

have any properly filed applications for post-conviction or other collateral review pending before

the state courts. Absent further statutory or equitable tolling, therefore, as hereafter discussed, it

appears that the limitations period elapsed and that the petitioner's application is untimely.[5]

In seeking to avoid the effect of the limitations period, the petitioner contends that,

because the state trial court failed to serve him with a copy of the trial court's Ruling of

December 6, 2010, denying his PCR application, and because he was thereafter unsuccessful –

despite repeated attempts – in obtaining a formal copy of the trial court's Ruling until July 16,

2012, the time that elapsed after the date of the referenced Ruling and prior to his filing of an

appellate writ application in the intermediate appellate court in August, 2012, should not be

counted against him. This contention may be interpreted as asserting that the state court's long

delay in sending him a copy of the PCR Ruling should result in either (1) statutory tolling under

28 U.S.C. § 2244(d)(1)(B), which provides for the tolling of the limitations period when the

_____

5. It appears from the state court record that the petitioner filed in the state trial court, in August, 2012, a Motion for Production of Documents, and in February, 2013, a "Motion to Quash" and a "Motion to Vacate Broken Plea Bargain." Considering, however, that this Court concludes that the federal limitations period had already elapsed prior to the dates of such filings, the Court need not address the pendency of those motions or any subsequent related appellate proceedings. The Court notes, however, at least with regard to the request for production of documents, that that pleading would not be considered to be "an application for State post-conviction or other collateral review," the pendency of which would operate to toll the running of the limitations period under 28 U.S.C. § 2244(d)(2). *See, e.g., Guy v. Tanner*, 2014 WL 5364821, *5 n. 37 (E.D. La. Oct. 21, 2014).

petitioner faces an "impediment to filing an application created by State action in violation of the

Constitution or laws of the United States," or (2) equitable tolling in light of the particular facts

of this case.  In this regard, equitable tolling of the limitations period may be available in rare

instances if "some extraordinary circumstance stood in [the petitioner's] way and prevented

timely filing."  *See Holland v. Florida*, 560 U.S. 631, 649 (2010).  This Court will address both

potential avenues for additional tolling in the instant case.[6]

### Statutory Tolling

Pursuant to 28 U.S.C. § 2244(d)(1)(B), the limitations period does not run against a

habeas petitioner during the period that he faces a state-created impediment to filing that is "in

violation of the Constitution or laws of the United States."  By its terms, however, this provision

applies only "if the applicant was prevented from filing by such State action."  Thus, a petitioner

asserting a state-created impediment under this provision has the burden of showing that "(1) he

was prevented from filing a federal habeas corpus petition (2) by State action (3) in violation of

the Constitution or federal law."  *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003).  The

Court concludes in the instant case, for two reasons, that the statutory tolling provided by this

provision is not applicable to the petitioner's habeas corpus application before this Court.

First, the Fifth Circuit has strongly suggested that the statutory tolling which results from

a state-created impediment under § 2244(d)(1)(B) is not triggered by a state court's mere delay

in notifying a petitioner regarding the issuance of a ruling or order in the state court proceedings.

---

6. For purposes of this Report and Recommendation, the Court will accept that the state
court clerk's office did not in fact send the petitioner a copy of the December 6, 2010, Ruling
denying the petitioner's PCR application and that the petitioner did not in fact receive a copy
thereof from the court until July 17, 2012.

Thus, in *Critchley v. Thaler*, 586 F.3d 318 (5th Cir. 2009), the Court noted that when the state

merely "fails to provide notice of its ruling on a state habeas petition to the affected petitioner ...,

equitable tolling rules govern that situation" instead of statutory tolling. *See id.* at 321 n. 3,

*citing Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009). *See also Clarke v. Rader*, 721

F.3d 339, 343 (5th Cir. 2013) (noting that "[w]e have serious reservations about whether the

State's failure to notify [the petitioner] of the ... denial provides a basis for a statutory tolling

claim rather than merely an equitable tolling claim"). *Cf., Williams v. Thaler*, 400 Fed. Appx.

886, 889 (5th Cir. 2010) (noting that it is "unclear" whether a state's failure to provide notice of a

writ denial "is a violation of constitutional or federal law under § 2244(d)(1)(B)"). Thus, it does

not appear that the mere failure of the state court clerk's office in this case to send the petitioner

a copy of the Ruling of December 6, 2010, denying his PCR application, constitutes State action

that is "in violation of the Constitution or laws of the United States" or is sufficient to invoke the

statutory tolling provided by § 2244(d)(1)(B).

Further, in order for statutory tolling to apply, the petitioner must show that the state-

created impediment in fact *prevented* him from filing a timely habeas corpus application in this

Court. As previously explained, however, when the petitioner tolled the limitations period by

filing his initial PCR application in state court on June 3, 2009, only 33 days had elapsed from

the one-year limitations period since his conviction had become final, and he had 332 days

remaining within which to file a timely federal habeas application. The limitations period

thereafter remained tolled until the Ruling of December 6, 2010, denying the petitioner's PCR

application, and also remained tolled for an additional thirty (30) days thereafter, until January 5,

2011. *See Melancon v. Kaylo, supra*. Whereas the limitations period began to run again on that

date, and although the petitioner complains that the state court failed to provide him with a copy

of the December 6, 2010, PCR Ruling, he was nonetheless informed of the state court action

shortly thereafter, through the denial of his mandamus application in the intermediate appellate

court on January 14, 2011.  The petitioner thereafter waited more than a year and a half, until

August 16, 2012, before he filed an application for supervisory review in the intermediate

appellate court, seeking further consideration in connection with his PCR claims.  Based upon

this scenario, this Court is unable to conclude that the petitioner was in fact *prevented* from filing

a timely habeas application in this Court by the delayed notice.  Instead, his failure to file a

timely application was apparently the result of his mistaken belief (1) that notwithstanding his

*actual* notice that the PCR application had been acted upon in the lower state court, he was

entitled to wait indefinitely, until he received a formal copy of the referenced PCR Ruling,

before he proceeded with his writ application in the state appellate court, and (2) that the

resulting delay would not be counted against him.

A somewhat analogous factual situation was presented in *Clarke v. Rader, supra*,

wherein the Fifth Circuit concluded that statutory tolling under § 2244(d)(1)(B) did not apply.

In *Clarke*, the petitioner complained, *inter alia,* that the final decision of the Louisiana Supreme

Court denying his writ application in connection with his PCR application was not timely

forwarded to him by the clerk of that court.  Accordingly, he asserted that the delay in notice

amounted to a state-created impediment to timely filing that warranted the application of

statutory tolling.  The Fifth Circuit disagreed, however, finding that the petitioner had received

actual notice of the supreme court writ denial from his attorney with sufficient time remaining to

file a timely federal habeas petition, and yet he had waited an additional two months to do so.

Thus, the Court concluded that the petitioner had failed to meet his burden of showing "that the State's failure to notify him ... played any role in his failure to timely file" because he had received actual notice of the denial within weeks thereof, while he still had time to proceed. *See also McNac v. Thaler*, 480 Fed. Appx. 338, 344 (5th Cir. 2012) (finding no statutory tolling where, upon conclusion of a 4-month delay caused by the state court clerk's failure to process the petitioner's application, he still had time within which to file a timely federal application and so was not *prevented* from filing by the delay). Further, the Court found in *Clarke* that the petitioner's failure to timely file was less a function of the state court's failure to provide notice and more a result of his "erroneous belief" that the period of time that elapsed during the pendency of his state PCR proceedings would not be counted against him. Similarly in this case, the petitioner apparently believed that the period that elapsed prior to his receipt of a formal copy of the Ruling on his PCR application – a period comprising more than 1½ years and during which he had actual notice that a decision had been issued – would not be counted against him. This was an unreasonable conclusion on the petitioner's part. Specifically, the petitioner was aware, through receipt of the First Circuit Court's Mandate in January, 2011, that a final decision had been issued in connection with his PCR application, and he was also aware of the issues that were presentable to the appellate court in connection with that application. In the Court's view, the petitioner's alleged inability to obtain a formal copy of the referenced PCR Ruling of December 6, 2010, did not *prevent* him from proceeding to the next stage of the post-conviction proceedings for a period exceeding 1½ years.[7] Accordingly, as in *Clarke*, statutory tolling does

_____

    7. The petitioner emphasizes the efforts he allegedly made to obtain a copy of the trial court's Ruling of December 6, 2010 (and also a copy of the trial court's Ruling of April 22, 2010, denying his Motion to Vacate), specifically through the filing of applications for writs of

not apply because the petitioner "has not sustained his burden to show it was the State's failure

to notify him ... that prevented him from timely filing his petition; instead, it was, in all

probability, [his] mistaken assumption that he had [additional time] to timely file." *Id.* at 344.

For this reason, statutory tolling under 28 U.S.C. § 2244(d)(1)(B) does not apply.

Equitable Tolling

The one-year federal limitations period may also be subject to equitable tolling but only

"in rare and exceptional circumstances." *See United States v. Patterson*, 211 F.3d 927, 928 (5th

Cir. 2000). The doctrine of equitable tolling "applies principally where the plaintiff is actively

misled ... or is prevented in some extraordinary way from asserting his rights." *Coleman v.*

*Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). In order to be entitled to equitably tolling, "[a]

petitioner's failure to satisfy the statute of limitations must result from external factors beyond

---

mandamus in the First Circuit appellate court in 2010 and early 2011, and also thereafter in December, 2011, and May, 2012. However, his initial mandamus applications only complained of the trial court's alleged failure to rule on his pending motions, not of the failure to provide him with copies thereof, and those applications were denied as moot in January and February, 2011, respectively, for the reason that rulings on his motions had already been issued. The petitioner did not apparently file any further pleadings or motions in the state trial court seeking to obtain copies of the referenced rulings. Although the record includes a copy of correspondence dated July 18, 2011, that the petitioner apparently addressed to the clerk of the state trial court (requesting copies of the rulings), and although that letter makes reference to two alleged prior letters, copies of which are not included and so are not available for review, the record does not reflect that the petitioner addressed any further requests or inquiries to the state trial court thereafter. To the contrary, it appears that the petitioner's next filing in the state trial court was a Motion for Production of Documents filed in August, 2012, more than a year after the July 18, 2011, letter of inquiry. Further, whereas the record also includes copies of written letters and inquiries addressed by the petitioner to prison officials, seeking to obtain copies of his mail records and/or a copy of the trial court's rulings, this Court does not find that these inquiries were an effective or reasonable attempt to obtain copies of state court pleadings. Finally, the petitioner did not file a formal mandamus proceeding in the state appellate court, seeking to obtain a copy of the state court rulings, until December, 2011, almost a year after he was notified that the trial court had acted on the PCR application.

his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006). Generally, a litigant seeking equitable tolling bears the burden of establishing two elements, (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. DeGuglielmo, supra*, 544 U.S. at 418. Ignorance of the law, lack of knowledge of filing deadlines, a temporary denial of access to research materials or the law library, and inadequacies in the prison law library are not generally sufficient to warrant equitable tolling. *Tate v. Parker*, 439 Fed. Appx. 375, 376 (5th Cir. 2011); *Felder v. Johnson*, 204 F.3d 168, 171-2 (5th Cir. 2000). Further, equitable tolling "is not intended for those who sleep on their rights." *Manning v. Epps,* 688 F.3d 177, 184 (5th Cir. 2012), *cert. denied,* ___ U.S. ___, 133 S.Ct. 1633 (2013). Thus, a federal habeas petitioner is required to act with diligence and alacrity both during the period allowed for the filing of state post-conviction review proceedings and also after the conclusion of those proceedings in the state appellate courts. *See Ramos v. Director*, 2010 WL 774986, *4 (E.D. Tex. March 1, 2010). "The diligence required for equitable tolling purposes is reasonable diligence, ... not maximum feasible diligence," *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal quotation marks omitted), and equitable tolling decisions "must be made on a case-by-case basis." *Id.* at 649-50. In addition, whereas it has been found that "[l]ong delays in receiving notice of state court action" may constitute extraordinary circumstances that warrant equitable tolling, *see Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009); *Phillips v. Donnelly,* 216 F.3d 508, 511 (5th Cir. 2000), a petitioner is required to act with due diligence after receiving such notice. *Williams v. Thaler, supra*, 400 Fed. Appx. at 891.

In concluding that the petitioner is not entitled to equitable tolling in this case, the Court focuses upon the perceived lack of diligence shown by the petitioner in this case in proceeding to the state appellate court after being informed that his state court PCR application had been acted upon by the state trial court. He thus failed to proceed with alacrity so as to preserve his right to pursue federal habeas corpus relief in light of the procedural posture of the state court proceedings. In this regard, it appears that although the state trial court apparently did not provide the petitioner with a timely copy of the December 6, 2010, Ruling denying his PCR application, the petitioner was nonetheless advised of the issuance of that Ruling approximately a month and a half later through the denial of his mandamus application by the state appellate court on January 14, 2011. The petitioner then admittedly waited more than 1½ years, or until August 16, 2012, before he filed an application for supervisory review before the intermediate state appellate court. The Court is unable to disregard this 19-month period during which the petitioner failed to proceed as warranted in this case. Whereas the petitioner asserts that during that interval, he was diligently attempting to obtain a formal copy of the state court Ruling and should not be penalized for his failure to proceed in its absence, this Court is not persuaded by his contentions in this regard. First, in the context of equitable estoppel, the Court finds that the petitioner's obligation to proceed with reasonable diligence to the next stage of post-conviction review was triggered by his *actual knowledge* that the trial court had acted on his PCR application on December 6, 2010, not by his later delayed receipt of a formal copy of the trial court ruling. In other words, with explicit knowledge of the issuance of a ruling on his PCR application, it was neither reasonable nor diligent for the petitioner to fail to take action to seek further substantive review of his PCR claims before the intermediate appellate court. The

petitioner certainly could have asserted those claims in a writ application before the appellate court notwithstanding that he did not have a formal copy of the one-page Ruling denying his PCR application. *See Givens v. Prince*, 2014 WL 897816, *5 n. 5 (W.D. La. March 6, 2014) (noting that under Louisiana law, "an inmate may file for postconviction relief without supporting documentation").

In addition to the foregoing, this Court is unwilling to interpret the petitioner's *purported* efforts at obtaining written copies of the referenced rulings on his post-conviction motions as sufficient to amount to diligent conduct that relieved him of an obligation to proceed with greater regard for the passing of the federal limitations period. Specifically, the petitioner has provided the Court with only a single item of correspondence, addressed to the state court clerk's office in July, 2011 (months after the petitioner was advised of the lower court's action on his post-conviction motions), requesting copies of the referenced rulings. Whereas that letter makes reference to two purported prior letters (copies of which are not provided), the petitioner does not assert that he addressed any subsequent letters to the state court clerk's office or filed any motions or pleadings requesting such relief. There is then a gap of an additional five months before the petitioner's filing of a mandamus application in the intermediate appellate court in December, 2011, seeking to obtain copies of the lower court rulings. *See* note 7, *supra*. In addition, the Court notes with curiosity that the state court record reflects that the petitioner apparently retained an attorney in 2011, who filed a motion to enroll as counsel of record on the petitioner's behalf in March, 2011 (but took no further formal action in the proceedings). This was several months *after* the petitioner was advised of the state court's action on his PCR application. Even accepting the petitioner's contention that the state court clerk's office failed to

honor the petitioner's requests to forward a copy of the referenced ruling, the Court sees no

explanation for the petitioner's inability, through his retained attorney, to obtain copies of same

if needed or requested. Finally, whereas the petitioner was not legally required to file an earlier

"protective" federal habeas corpus application in order to show that he was acting with diligence,

*see Palacios v. Stephens*, 723 F.3d 600, 607-08 (5th Cir. 2013), *citing Pace v. DeGuglielmo*, 544

U.S. 408, 416 (2005), such a filing would have protected him from the running of the limitations

period, and his failure to do so weighs against a finding of equitable tolling in this case. *Id.*

Based on the foregoing, the Court finds that the petitioner is not entitled to equitable

tolling in this case. In short, there was a period of substantially more than a year that elapsed

after the trial court's ruling on the petitioner's PCR application in December, 2010, and after the

petitioner was *advised* of that ruling before he filed an application for further review in the state

appellate court in July, 2012. The petitioner has not shown that he was acting with diligence

during that lengthy period sufficient to support a finding of rare and exceptional circumstances

that warrant the application of equitable tolling.

Finally, in certain rare instances, a petitioner may seek to avoid the effect of untimeliness

by establishing that he is in fact innocent of the charged offenses. Specifically, in *McQuiggin v.*

*Perkins*, ___ U.S. ___, 133 S.Ct. 1924 (2013), the United States Supreme Court concluded that

actual innocence, if proven, may serve as a gateway through which a petitioner may pass to

avoid a procedural impediment such as the statute of limitations. The Court cautioned, however,

that viable actual-innocence gateway claims are rare, explaining that "a petitioner does not meet

the threshold requirement unless he persuades the district court that, in light of ... new evidence,

no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.*

at 1928, *citing Schlup v. Delo*, 513 U.S. 298, 329 (1995) (internal quotation marks omitted).  To

be credible, a claim of actual innocence requires that a petitioner support his allegations of

constitutional error with new reliable evidence, whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial.

*Schlup v. Delo, supra*, 513 U.S. at 324.  In the instant case, the petitioner has presented no new

evidence, much less evidence sufficient to support a claim of actual innocence, and he has

therefore failed to set forth a viable claim of actual innocence sufficient to avoid the operation of

the limitations bar.  Accordingly, the petitioner's application should be dismissed as untimely.

Based on the foregoing, the Court concludes that the petitioner's application is untimely

and that he is not entitled to either statutory or equitable tolling.  Accordingly, the instant habeas

corpus application should be dismissed as untimely.

### Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus

proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. §

2253(c)(1)(A).  Although the petitioner has not yet filed a Notice of Appeal herein, the Court

may address whether he would be entitled to a certificate of appealability.  *See Alexander v.

Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a

habeas petitioner has made a substantial showing of the denial of a constitutional right.  28

U.S.C. § 2253(c)(2).  In cases where the Court has rejected a petitioner's constitutional claims on

procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable

whether the petition states a valid claim of a denial of constitutional right *and* that jurists of

reason would find it debatable whether the district court was correct in its procedural ruling."

*Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original).  In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the procedural ruling.  Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

**RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied, with prejudice, as untimely.  It is further recommended that, in the event that the petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on June 26, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CEDRICK MORGAN (#132458)**                                 **CIVIL ACTION**

**VERSUS**

**TERRY TERRELL, WARDEN**                                 **NO. 13-0783-BAJ-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 26, 2015.

 

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**